UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| ANGELA FLORES, Parent and next friend of J.F., a minor, Plaintiff, v. DISTRICT OF COLUMBIA, A municipal corporation, Defendant. | Civil Action No. 05-653 (RBW) |

**MEMORANDUM OPINION**

Plaintiff Angela Flores brings this action for injunctive relief under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. (2000) ("IDEA"),[1] against the District of Columbia.[2] The plaintiff alleges that the District of Columbia Public Schools ("DCPS") failed to provide funding for full, appropriate, and independent educational evaluations of her minor child,

---

[1] Congress reauthorized and amended the IDEA through the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. 108-446, 118 Stat. 2647. These amendments, which did not take effect until after this lawsuit was filed, see Pub. L. 108-446 § 302(a)(1), 118 Stat. at 2803, cf. Kaseman v. District of Columbia, 444 F.3d 637, 638 n.1 (D.C. Cir. 2006), do not affect the merits of the plaintiff's claims.

[2] The original complaint, brought by J.F., named as defendants Anthony Williams, Mayor of the District of Columbia, and Clifford B. Janey, Superintendent of the District of Columbia Public Schools. At the Initial Scheduling Conference held on August 2, 2005, the Court granted the defendant's unopposed oral motion to substitute the following parties: the District of Columbia for both Mayor Williams and Superintendent Janey as the defendant, as both were sued in their official capacities, and Angela Flores, the parent and next friend of J.F., as the plaintiff. A Notice of Substitution of Parties was also filed on August 2, 2005.

J.F.,[3] in violation of 20 U.S.C. § 1414(a)(2)(A) and an order issued by the DCPS's Office of Management Services.  Compl. ¶ 28.  Consequently, the plaintiff alleges that the DCPS failed to develop an Individualized Education Program ("IEP") for J.F. "based on full [and] appropriate evaluations," Compl. ¶ 32, thus violating J.F.'s right to a free appropriate public education ("FAPE"), Compl. ¶¶ 34-37.  Currently before the Court is the defendant's motion to dismiss the plaintiff's complaint or, in the alternative, for summary judgment.[4]  For the reasons set forth below, the defendant's motion is denied.

---

[3] While Local Civil Rule 5.4(f) requires that the names and birthdates of minor children be redacted from all filings in this Court (and for children's initials to be substituted for their names), the Court notes that the plaintiff failed to redact this information from her complaint, Compl. ¶ 4, and from her most recent filing in this case, see Plaintiff's Memorandum in Surreply to Motion to Dismiss ("Pl.'s Surreply"), Ex. 1 at 1-4.  The plaintiff's counsel should avoid such transgressions in the future.

[4] The following papers have been submitted to the Court in connection with this motion:  (1) Memorandum in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Def.'s Mem."); (2) Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl.'s Opp."); (3) Defendant's Reply to Plaintiff's Opposition to its Motion to Dismiss ("Def.'s Reply"); and (4) Plaintiff's Memorandum in Surreply to Motion to Dismiss ("Pl.'s Surreply").

It is unclear from the face of the defendant's motion on what basis it seeks dismissal of the plaintiff's complaint.  By its motion, the defendant asks this Court, "pursuant to [Federal Rule of Civil Procedure] 12(b)(1), to dismiss [this] case for failure to state a claim upon which relief can be granted.  Alternatively, should the Court deem it necessary to treat this motion as one for summary judgment pursuant to [Rules] 12(b)(6) and 56, Defendant requests a grant of summary judgment."  Def.'s Mot. at 1.  However, the entirety of the defendant's argument in support of its motion challenges the Court's jurisdiction over the subject matter of this dispute on the grounds that the case has become moot.  See Def.'s Mem. at 5-6.

Because the defendant explicitly cites Federal Rule of Civil Procedure 12(b)(1) as the basis for its motion to dismiss (though erroneously describing Rule 12(b)(1)'s content), Def.'s Mot. at 1, and because the defendant's sole argument in support of dismissal is its contention that the case has become moot, the Court will construe the defendant's motion as seeking dismissal for lack of subject matter jurisdiction under Rule 12(b)(1).  See Sierra Club v. Browner, 130 F. Supp. 2d 78, 82 (D.D.C. 2001) (holding that "because the [defendant's] motion [to dismiss] essentially targets this Court's jurisdictional competence to consider this matter" on mootness grounds, "the Court shall construe it as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)"); see also Taurus Prop. Ventures, L.L.C. v. City of Plant City, Civ. No. 8:05-1037-T-23, 2006 WL 68929, at *1-2 (M.D. Fla. Jan. 11, 2006) (holding that where defendant moved to dismiss "citing all three rules [12(b)(1), 12(b)(6), and 56]," because defendant's "aim is mainly jurisdictional," Rule 12(b)(1) is "the operative guide").

## I. Background

The plaintiff alleges the following facts in support of her claims. On September 10, 2003, an administrative hearing officer ordered the DCPS to conduct a bilingual psychoeducational evaluation of J.F. Pl.'s Opp. at 1. When the DCPS failed to conduct this evaluation, a subsequent Hearing Officer's Decision ("HOD") was issued on November 3, 2004, mandating that, "[a]ccording to Superintendent's Directive 530.6, DCPS shall fund independent bi-lingual psychoeducational and speech/language valuations [sic] of the student." Compl. ¶ 8. Directive 530.6 sets forth the schedule of rates at which the DCPS will reimburse guardians for various types of independent evaluations. Compl. ¶ 9; Pl.'s Opp. at 1-2.[5]

Following the issuance of the November 3, 2004 HOD, the plaintiff's counsel at the administrative level, Carolyn Houck, attempted to secure the two independent, bilingual evaluations that the administrative hearing officer ordered the DCPS to fund for J.F. Compl. ¶ 11; Pl.'s Opp. at 2. None of the potential evaluators contacted by Houck, however, offered to provide the evaluations she sought at a rate at or below those prescribed by Directive 530.6. Compl. ¶ 11; Pl.'s Opp. at 2.[6] Houck then contacted the Director of Compliance of the DCPS's Division of Special Education, Jeffrey Kaplan, "to reach an agreement regarding the evaluation

---

[5] The parties disagree about whether Directive 530.6 was intended to cover both monolingual and bilingual evaluations. The plaintiff asserts that Directive 530.6 is not applicable to bilingual evaluations because the Directive does not mention them specifically. Compl. ¶ 9; Pl.'s Opp. at 1-2. On the other hand, the defendant maintains that Directive 530.6 governs all independent evaluations, whether monolingual or bilingual, as the Directive makes no special exception for bilingual evaluations. Def.'s Mem. at 3-4; Def.'s Reply at 3.

[6] The combined maximum amount for which Directive 530.6 allows reimbursement for the two types of evaluations that the DCPS was ordered to provide to J.F. is $2,340.00, while the lowest combined rate Houck identified from the potential evaluators she contacted was $3,000.00. Compl. ¶ 3.

funding," Compl. ¶ 12, but Kaplan refused to approve funding for the evaluations at the rates solicited by Houck.  Compl. ¶ 13; Pl.'s Opp. at 2.

When the DCPS did not respond to a second request by Houck for funding, Compl. ¶ 14, the plaintiff requested another administrative hearing, seeking the same remedies demanded in her present complaint, Compl. ¶ 15.  Following the second hearing, the hearing officer dismissed the plaintiff's case in a HOD issued on February 7, 2005.  Compl. ¶ 23.  The hearing officer concluded that the November 2004 HOD did not entitle the plaintiff to evaluations at a cost above the rates authorized in Directive 530.6.  Thus, the hearing officer found that the plaintiff had the option of either paying the difference between the actual cost of the independent evaluations and the maximum set by the Directive or requesting that the DCPS provide the evaluations in-house.  Administrative Record ("AR") at 33.  The plaintiff filed a motion for reconsideration on February 22, 2005, which the hearing officer denied on March 1, 2005.[7]  The plaintiff then filed the complaint in this action on March 31, 2005, alleging violations of the IDEA and seeking the relief described above.  Compl.; Pl.'s Opp. at 3.

In her complaint, the plaintiff seeks an injunction ordering the defendant to fund independent, bilingual psychoeducational and speech-language evaluations of J.F. performed by a specified third party vendor, paid in advance, at a cost above that authorized by the defendant's current policy governing procurement of independent evaluations.  Compl. at 6.  The plaintiff also requests that the Court compel the DCPS to "convene a Multi-Disciplinary Team [MDT]

---

[7] As the administrative record reveals, the motion for reconsideration of the February 7, 2005 HOD was based on the fact that the February 7 HOD apparently did not take into account a letter from the plaintiff's counsel to the hearing officer (which the hearing officer requested, and which the plaintiff's counsel claimed to have sent, but which the hearing officer did not receive before issuing the February 7 HOD) indicating what efforts the plaintiff's counsel had made to secure evaluations at rates below those prescribed by Directive 530.6.

meeting within 15 days of receipt of the evaluations to review the evaluations, revise J.F.'s IEP, determine an appropriate school placement, and determine a compensatory education plan for J.F." Compl. at 6.

At a scheduling conference on August 2, 2005, the Court recommended that the DCPS perform the two evaluations of J.F. itself. Def.'s Mem. at 4; Pl.'s Opp. at 3. Counsel for both parties agreed, Def.'s Mem. at 4, and the DCPS completed the two evaluations on August 5 and August 9, 2005, Def.'s Mem. at 4, Pl.'s Opp. at 3. After the evaluations were completed, the DCPS invited the plaintiff to attend a MDT meeting at which J.F.'s IEP would be reevaluated in light of the evaluations it had conducted. Def.'s Mem. at 4. The MDT meeting was conducted on September 6, 2005. Def.'s Reply at 1 n.1, Ex. 1; Pl.'s Surreply at 1, Ex. 1. While the plaintiff concedes that the MDT meeting took place on September 6 and that the MDT reviewed J.F.'s new evaluations, developed a new IEP for J.F., and determined a school placement for J.F. at that time, Pl.'s Surreply at 1, the plaintiff contends that no compensatory education plan was developed at the MDT meeting, Pl.'s Surreply at 1, Ex. 1.

In support of its motion to dismiss, the defendant asserts that the plaintiff's case has been rendered moot because all of the relief demanded in the complaint has now been provided. Def.'s Mem. at 5-6; Def.'s Reply at 2. Specifically, the defendant contends that both of the specific requests made in the plaintiff's prayer for relief—"the completion of J.F.'s evaluations and the convening of an MDT meeting,"[8] Def.'s Reply at 2—have already been satisfied. Def.'s Mem. at 6; Def.'s Reply at 2. The plaintiff argues in response that all the relief sought in her

---

[8] The defendant alternatively characterizes the former of the two specific types of relief sought by the plaintiff as "evaluations at no cost to the parent." Def.'s Mem. at 6.

complaint has not been satisfied.[9]  Specifically, the plaintiff asserts that no compensatory education plan was developed for J.F. at the MDT meeting, despite such a plan being among the specific relief sought in the complaint.[10]  Pl.'s Surreply at 1.  Because the Court may still grant such relief, the plaintiff contends that this case is not yet moot.  Id.

## II.  Standard of Review

Motions to dismiss on grounds of mootness are properly brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure.[11]  Abu Ali v. Gonzales, 387 F. Supp. 2d 16, 17 (D.D.C.

---

[9] The plaintiff also asserts that even if all the relief sought in the complaint has been satisfied, this case falls into an exception to the mootness doctrine—cases involving defendants who voluntarily cease engaging in the challenged action and who would avoid judicial review even though the conduct is capable of recurring.  Pl.'s Opp. at 5-9.  However, the plaintiff appears to have conflated two different but related exceptions to the mootness doctrine—cases where the defendant voluntarily ceases the activity challenged by the plaintiff, see, e.g., Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 609 (2001), and cases where conduct impacting a plaintiff is capable of repetition but judicial review will be evaded because "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration[;] and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again," United States v. Weston, 194 F.3d 145, 148 (D.C. Cir. 1999) (alterations in original, internal quotation marks and citation omitted), see, e.g., Honig v. Doe, 484 U.S. 305, 318-23 (1988)—into a single, sweeping exception.  See Pl.'s Opp. at 5-9.  In any event, while the Court does not believe that either of these exceptions is applicable in this case, the Court's determination that the plaintiff's requests for relief have not been rendered moot, see infra, makes it unnecessary to rule on the applicability of either exception.

[10] In addition to her request for compensatory education, the plaintiff asserts that two other requests in her complaint have not been satisfied.  First, the plaintiff contends that that the general prayer for relief contained in her complaint, requesting "any other relief the Court deems just," Compl. at 6, empowers this Court to render further "effectual relief," and therefore the case is not yet moot.  Pl.'s Opp. at 4-5.  The plaintiff identifies several types of injunctive and declaratory relief the Court may infer from her general prayer for relief.  Second, the plaintiff contends that her complaint demands funding for independent evaluations, as opposed to evaluations conducted in-house by the DCPS.  Pl.'s Opp. at 4; Pl.'s Surreply at 1.  Thus, because the DCPS continues to refuse to provide the funding demanded by the plaintiff, she argues that her complaint cannot be moot.  Pl.'s Surreply at 1.  While the Court seriously doubts that either of these arguments has merit, it need not address them in light of its determination that the case is not moot because plaintiff's request for compensatory education has not been satisfied.

[11] Where a factual attack on a court's jurisdiction is "intertwined" with the merits of the dispute, however, the court must treat the case as a motion for summary judgment under Rule 56.  See Marcussen v. Leavitt, 2005 WL 3664802, *11 (D.N.M. 2005) (citing Holt v. United States, 46 F.3d 1000, 1002-03, (10th Cir. 1995)) (treating the defendant's motion to dismiss under Rule 12(b)(1) on grounds of mootness as a Rule 12(b)(6) motion, which was then converted into a motion for summary judgment, as a ruling on the court's jurisdiction required a determination of the same facts as an adjudication on the merits); see also Taurus Prop. Ventures, L.L.C. v. City of Plant City, Civ. No. 8:05-1037-T-23, 2006 WL 68929, at *2 n.2 (M.D. Fla. Jan. 11, 2006) ("[I]f the Rule 12(b)(1) facts implicate the merits of the plaintiff's cause of action...the court should find jurisdiction and deal with the objection [to the court's
(continued...)

2005); Fund for Animals v. Mainella, 335 F. Supp. 2d 19, 22 (D.D.C. 2004) (Walton, J.). Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." Erby v. United States, 424 F. Supp. 2d 180, 181 (D.D.C. 2006) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)); see also Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13, 21 (D.D.C. 2003) (Walton, J.) ("Throughout the Court's jurisdictional inquiry, it is plaintiff's burden to establish that the Court has jurisdiction.").[12] "The [C]ourt, in turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority, which includes the obligation to consider the possibility of mootness." Abu Ali, 387 F. Supp. 2d at 17 (internal quotations omitted); accord Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

A court ruling on a Rule 12(b)(1) motion to dismiss "may consider documents outside the pleadings to assure itself that it has jurisdiction." Al-Owhali, 279 F. Supp. 2d at 17; see also Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987) ("In 12(b)(1) proceedings, it has been long

---

[11](...continued) jurisdiction] as an attack on the merits under Rule 56."). Here, however, the Court need not determine the merits of the complaint in order to decide whether the plaintiff has already received the relief she is now seeking to remedy her asserted harm.

[12] Where the defendant asserts, however, that the "question sought to be adjudicated has been mooted by subsequent developments," and consequently that "no justiciable controversy is presented" for the court to decide, Flast v. Cohen, 392 U.S. 83, 96 (1968), the defendant bears the burden of establishing that the case is in fact moot, Mangual v. Rotber-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) ("[T]he burden of establishing mootness rests squarely on the party raising it."); accord Kennedy Bldg. Assoc. v. Viacom, Inc., 375 F.3d 731, 745 (8th Cir. 2004). In particular, where a defendant contends that its voluntary compliance with the plaintiff's demands has rendered the case moot, "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," Laidlaw, 528 U.S. at 189. Because the Court holds that the plaintiff's requests for relief have not all been satisfied, it need not decide whether the voluntary cessation doctrine applies here and thus need not determine whether the defendant has demonstrated that the challenged conduct cannot reasonably be expected to recur.

accepted that the judiciary may make appropriate inquiry beyond the pleadings to satisfy itself on [sic] authority to entertain the case." (internal citations and quotation marks omitted)). The level of scrutiny with which the Court examines the allegations in the complaint that support a finding of jurisdiction, however, depends upon whether the motion to dismiss asserts a facial or factual challenge to the court's jurisdiction. See I.T. Consultants, Inc. v. Pakistan, 351 F.3d 1184, 1188 (D.C. Cir. 2003).

Facial challenges, such as motions to dismiss for lack of standing at the pleading stage, "attack[] the factual allegations of the complaint that are contained on the face of the complaint." Al-Owhali, 279 F. Supp. 2d at 20. "If a defendant mounts a facial challenge to the legal sufficiency of the plaintiff's jurisdictional allegations, the court must accept as true the allegations in the complaint and consider the factual allegations of the complaint in the light most favorable to the non-moving party." Erby, 424 F. Supp. 2d at 181; see also I.T. Consultants, 351 F.3d at 1188. The court may look beyond the allegations contained in the complaint to decide a facial challenge, "as long as it still accepts the factual allegations in the complaint as true." Abu Ali, 387 F. Supp. 2d at 18; see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("At the pleading stage . . . . [w]hile the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true." (internal citations and quotation marks omitted)).

Factual challenges, by contrast, are "addressed to the underlying facts contained in the complaint." Al-Owhali, 279 F. Supp. 2d at 20. Where a defendant disputes the factual allegations in the complaint that form the basis for a court's subject matter jurisdiction, "the court

may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant," Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000). Instead, a court deciding a Rule 12(b)(1) motion asserting a factual challenge "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." Id. In such situations, "the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Erby, 424 F. Supp. 2d at 183 (internal quotation marks omitted); see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1976) (holding that a court ruling on a factual challenge to its jurisdiction is not required to accept the plaintiff's factual allegations as true, but rather "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. . . . and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."). Here, because the defendant's motion asserts that developments subsequent to the filing of the complaint have rendered the case moot, the motion raises a factual challenge to the Court's subject matter jurisdiction.

### III.  Legal Analysis

The defendant argues that this case is now moot because it has provided all of the relief the plaintiff sought in her complaint. Def.'s Reply at 2. In response, the plaintiff contends that the present case is not moot because, inter alia, her request for a compensatory education plan has not been satisfied.[13] Pl.'s Surreply at 1. The Court agrees with the plaintiff.

---

[13] The complaint does not specifically seek an injunction ordering the DCPS to provide compensatory education, but rather requests that the Court order that at the MDT meeting, the DCPS "determine a compensatory

(continued...)

"Article III, section 2 of the Constitution limits federal courts to deciding 'actual, ongoing controversies,'" 21st Century Telesis Joint Venture v. Fed. Commc'ns Comm'n, 318 F.3d 192, 198 (D.C. Cir. 2003) (quoting Honig v. Doe, 484 U.S. 305, 317 (1988)), "rather than issuing advisory opinions or deciding questions that cannot affect the rights of litigants in the case before them," Pub. Utils. Comm'n of California v. FERC, 236 F.3d 708, 713 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Clarke v. United States, 915 F.2d 699, 701 (D.C. Cir. 1990) (internal quotation marks and citation omitted). Thus, "where the challenged conduct ceases or is alleviated, and there is no reasonable expectation that the wrong will be repeated," a case is rendered moot because it has "become[] impossible for the court to grant any effectual relief whatever to [the] prevailing party, and any opinion as to the legality of the challenged action would be advisory." Green v. Dist. of Columbia, Civ. No. 05-550, 2006 WL 1193866, at *9 (D.D.C. May 2, 2006) (quoting City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000)) (internal quotation marks omitted).

The Court's power to grant compensatory education for IDEA violations is undisputed. Where a person brings an action alleging a violation of the IDEA, the Court is empowered to

---

(...continued)
education plan for J.F." Compl. at 6. As the Court must construe the plaintiff's complaint liberally when ruling on a Rule 12(b)(1) motion, see Convertino v. U.S. Dep't of Justice, 393 F. Supp. 2d 42, 45 (D.D.C. 2005), the Court will interpret the plaintiff's request as seeking an injunction compelling the DCPS to both develop and provide compensatory education for J.F. Cf. Lesesne ex rel. B.F. v. Dist. of Columbia, 447 F.3d 828, 833 (D.C. Cir. 2006) (holding that the plaintiff's IDEA complaint sought compensatory education, even though the prayer for relief did not specifically make such a request, where the plaintiff indicated elsewhere in the complaint that she was seeking compensatory education as part of the relief).

"grant such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). "Federal courts have interpreted 'appropriate relief' to include compensatory education as an equitable remedy to be granted upon finding that a child has been denied FAPE under the Act." Diatta v. Dist. of Columbia, 319 F. Supp. 2d 57, 64 (D.D.C. 2004) (citations omitted). "Under the theory of 'compensatory education,' courts and hearing officers may award educational services . . . to be provided prospectively to compensate for a past deficient program." Reid v. Dist. of Columbia, 401 F.3d 516, 522 (D.C. Cir. 2005) (internal quotation marks and citations omitted).[14]

    Here, the plaintiff argues that her case is not yet moot because the defendant has not completely satisfied the requests in her complaint that it "convene a Multi-Disciplinary Team [MDT] meeting within 15 days of receipt of the evaluations to review the evaluations, revise J.F.'s IEP, determine an appropriate school placement, and <u>determine a compensatory education plan for J.F.</u>," Compl. at 6 (emphasis added); <u>see</u> Pl.'s Surreply at 1. Although the plaintiff concedes that the MDT meeting was held, that at the meeting J.F.'s IEP was revised, and that a placement was determined for J.F,[15] the plaintiff contends that the DCPS have still "failed to

---

[14] As the Court of Appeals in <u>Reid</u> explained:

> [T]his theory [of compensatory education] builds on the Supreme Court's holding in [<u>School Committee of the Town of Burlington, Mass. v. Dep't of Education of Mass.</u>, 471 U.S. 359, 369 (1985)] that 'appropriate' IDEA relief may include reimbursement for parents who place children in private school rather than accept a deficient public school IEP. If [the] IDEA permits reimbursement for educational services, courts have reasoned, then it must also allow awards of the services themselves. Based on such logic, courts have upheld awards requiring, among other things, special programs to make up for prior deficiencies. . . . In our view, this extension of <u>Burlington</u> to cover services as well as payments makes eminent sense.

<u>Reid</u>, 401 F.3d at 522.

[15] The MDT meeting was held on September 6, 2005, subsequent to the completion of the DCPS evaluations of J.F. in August 2005. Def.'s Reply at 1 and Ex. 1, at 1; Pl.'s Surreply, Ex. 1. at 1.

11

develop a compensatory education plan," and therefore that her complaint is not moot.  Pl.'s Surreply at 1.

The District of Columbia Circuit's recent decision in <u>Lesesne ex rel. B.F. v. Dist. of Columbia</u>, 447 F.3d 828 (D.C. Cir. 2006), requires that the defendant's mootness argument be rejected.  In <u>Lesesne</u>, a parent brought suit against the DCPS on her son's behalf alleging violations of the son's educational rights under the IDEA.  <u>Id.</u> at 829.  Claiming that the DCPS violated the IDEA by failing to satisfy certain procedural deadlines in evaluating and developing an educational plan for her son, the plaintiff's complaint requested that the DCPS develop a new IEP for her son, determine an appropriate placement for him, and develop a compensatory education plan to make up for the DCPS's past failure to provide her son with a FAPE.  <u>Id.</u> at 833-34.[16]

"At some point amidst Lesesne's flurry of litigation activity, the parties reached an 'agreement . . . on the record' that purported to resolve" the case brought by the plaintiff.  <u>Id.</u> at 831.  That agreement, however, did not address the plaintiff's demand for compensatory education.  <u>Id.</u> at 833.  For that reason alone, the Court of Appeals determined that the "complaint presented the District Court with a live controversy" that had not been mooted by the agreement.[17]  <u>Id.</u>

---

[16] The prayer for relief in the plaintiff's complaint did not specifically mention compensatory education. However, as the Court of Appeals noted, "although [the plaintiff's] own attorney fails to notice it, the very first paragraph on the very first page of her complaint contains an explicit demand for compensatory education." <u>Lesesne</u>, 447 F.3d at 833.

[17] After concluding that the plaintiff's complaint was not moot, however, the <u>Lesesne</u> Court determined on the merits that even if the DCPS had violated any of its procedural obligations in evaluating and determining a placement for the plaintiff's son, none of the son's substantive rights were affected. <u>Id.</u> at 834. Thus, the Court affirmed the District Court's grant of summary judgment for the DCPS. <u>Id.</u>

Guided by the Court of Appeals' holding in Lesesne, the Court concludes that this case has not yet become moot. As in Lesesne, the plaintiff here contends that her request for a compensatory education plan for J.F. has not been satisfied. Pl.'s Surreply at 1. It is not clear from the plaintiff's complaint whether the compensatory education plan she desires the DCPS to provide is intended to compensate J.F. for educational harm allegedly incurred prior to the November 2004 HOD, harm allegedly experienced because J.F. was not properly evaluated after the November 2004 HOD, or both. As was the case in Lesesne, however, there is no question that the DCPS have not yet developed a compensatory education plan for J.F. Cf. id. at 832. Moreover, also like Lesesne, there is no indication here that the parties' agreement that the DCPS would evaluate J.F. itself addressed the issue of whether J.F. is entitled to compensatory education. Cf. id. at 833. Even though the Court may ultimately determine, as the Court of Appeals did in Lesesne, that the plaintiff is not entitled to compensatory education for alleged procedural violations of the IDEA, the possibility that the Court may award such relief for harm incurred before or after November 2004 is sufficient to defeat the defendant's mootness challenge. See id. at 834.

### IV.   Conclusion

The defendant has yet to provide at least one form of relief specifically requested by the plaintiff in her complaint—a compensatory education plan for J.F. Moreover, the defendant has not demonstrated any other reason why it is at this time impossible for the Court to award any relief to the plaintiff or why the plaintiff's complaint should otherwise be dismissed as moot. The relief the defendant has already provided by evaluating J.F. itself and subsequently revising J.F.'s IEP and educational placement may significantly affect the merits of the plaintiff's case.

13

See Lesesne, 447 F.3d at 834 (affirming grant of summary judgment against the plaintiff on her IDEA claim where the plaintiff failed to show any substantive harm resulting from the defendant's procedural violations of the IDEA). Nonetheless, the plaintiff has demonstrated that the Court may still decide to grant specific relief sought by the plaintiff in her complaint, and therefore this case is not moot. Accordingly, and for the foregoing reasons, the Court denies the defendant's motion to dismiss.

**SO ORDERED** this 15th day of June, 2006.[18]

REGGIE B. WALTON
United States District Judge

---

[18] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.